calendar, that's Parents v. Commissioner of Social Security Administration. Just wait one second, Mr. Schneider. Mr. Schneider, you're reserved three minutes for rebuttal, so that gives you seven to begin. Before I get started with my argument, I want to correct a typo at bottom of page four in the sentence about extreme limitations, and it does not mean a total loss in ability to function. That's page four of Appellant's reply brief. In this case, the ALJ determined that Wayne Parent did have severe impairments of ADHD, depression, social anxiety, and COPD, but he erred because his functional residual capacity determination did not include all of the limitations from these impairments. The treating psychiatric nurse practitioner, Jennifer Canale, opined that he had, that Wayne had marked an extreme limitations in the four considerations in the listings for depression, anxiety, and PTSD, and those are understanding, remembering, or applying info, interacting with others, concentrating, persisting, maintaining pace, and adapting or managing oneself. And if the judge had found those opinions to be persuasive, she would have met the mental health listings. And her opinions were well supported by her own clinical examination notes and the rest of the evidence, including Wayne Parent's own testimony, and she actually reviewed his symptoms in that report, backing up her opinions. And it's very clear from reading through her notes that Mr. Parent had documented ups and downs, and that he never had a steady period of improvement, and he had many periods of deterioration. Her opinion... It seems that the nurse practitioner's statement about, you know, his impairments being extreme was made for the first time late in the process, and that was basically after he had stopped taking his medication, right? Yeah, but that was one medication. But when the report indicates that when he's on medication, he is moderate or relatively mildly impaired, and that's consistent with the nurse practitioner's notes prior to him stopping his medication. He didn't stop all of his medications at that point. He stopped one medication that had side effects that she noted. That's a schizophrenia drug, but prior to him coming off the medication, even the nurse practitioner referred to his impairments as either relatively mild or at most moderate. Am I right about that? At some points, but in her notes, she also talked about his continuing anxiety, continuing problems with getting along with people and depression, but her opinions were consistent with the commissioner's own examining consultant, Dr. Hartman, and the district court noted that the ALJ did fail to consider the supportability of N.P. Connelly's opinion, although it found it was harmless, but it is not harmless. That was at page 27 of the special appendix. But the ALJ, with respect to Dr. Hartman, did note an inconsistency in Hartman's own notes. And again, I understand. We just basically have to find whether the ALJ had pointed to any support for these conclusions. We're not deciding whether we would agree or we think the weight goes in that direction, but why isn't it enough to say that Hartman, you know, at one point is saying he's got a marked difficulty sustaining concentration, and at another point he's saying he's only mildly impaired with respect to his concentration? Well, first of all, yeah, those are two different things. One is mildly impaired and one is markedly limited, but also there is an inconsistency, and the ALJ did have an obligation to consult Dr. Hartman. He's a very experienced examiner. He's shown up in many district court cases. He's done thousands of these exams, and based on his exam, based on the serial sevens, based on his exam itself, where he found that Wayne Parent was anxious and clinically didn't appear to be well, he found that it was marked in those areas. So there is a inconsistency between mildly impaired and markedly limited, and the judge could have tried to resolve that, but Dr. Hartman was the one who examined him, and it was his opinion, and this is supported by nurse practitioners. Are you still claiming the argument that your client cannot be exposed to pulmonary irritants? Yes. Okay. And I think the issue that- None of this, so I have a follow-up question. Sure, okay. All right. None of the suggested jobs that were due to his conditions that were offered involved exposure to pulmonary irritants, so why isn't that issue moved? Well, I don't think that's clear, that they were all factory jobs. I think one involved plastic, and there was no testimony that there was no exposure to pulmonary- How can you claim that argument when the record suggests that your client cannot be exposed to pulmonary irritants when the evidence suggests that he smoked a pack of cigarettes? He did smoke. Isn't that inconsistent? I think that's a problem, but smoking's an addiction. He was trying to quit, and there are many cases saying- I mean, if he had quit smoking, he probably wouldn't have had COPD. He had severe COPD. Right, but I mean, the record reflects he smoked a pack of cigarettes a day, he was able to still do daily chores, he could cook and clean, and he worked on his roommate's vehicle during the day. It's hard to argue that the ALJ erred in making its determination when there's really nothing in the record to really, as Judge Kahn was saying, elaborate on what irritants would be problematic. Those are good points, but the doctor, the consultant, and in fact three of the consultants said he shouldn't be exposed either to any pulmonary irritants or more than anything more than moderate, and the judge didn't include that when he said concentrated. I am not hanging my hat on that one issue, but I think it's something to be considered. Now, Dr. Hartman also said rule out an intellectual disability diagnosis. On exam, he noted that Wayne was anxious and nervous, and he made errors on the Serial 7 test, and that's a test that's actually referenced in the CFR as a test of concentration. Now, generally, there are no tests for psychiatric impairments. It's based on a clinical analysis and knowing the person and looking at their symptoms as they testify, but here he made mistakes on this specific test. There's no reason to think that Dr. Hartman was biased against the commissioner. He knows the standards, and for the judge to rely on the non-consulting opinions when they had to rely on Dr. Hartman and Dr. Canale, I think is just wrong. I think you really have to look at the examining relationship and the specialty. I think the ALJ should have recontacted Dr. Hartman to say, how could you say he's mildly impaired when he failed the Serial 7 test, and then how could you say it was marked? But even if we go with the moderate limitations that the ALJ found, that would still suggest he would be off task at least 10 percent, and certainly would suggest that he would be missing work. The ALJ really cherry picked when he was getting better, but not when he was getting worse. The consultative examiners have to rely on the tests and the findings of the examiners, and I think it's ludicrous to say they're not equally well supported when the examiner has the ability to be with the person. So I think in this case there is not substantial evidence. You know, looking at the evidence from both sides, what adds and what detracts, and as a remedial statute you should liberally apply it. And what would a reasonable mind think? Would you, after reading all the evidence, would you think that Wayne Parent could perform these three jobs or any jobs? So I think that's what the substantial evidence test really is in this case, looking at it from both sides, what adds and what detracts, and I think the ALJ erred in this case. Thank you. All right, we've got three minutes for rebuttal. We'll now hear from Mr. Hurd. Thank you, Your Honors. Christopher Hurd, representing the Commissioner of Social Security. This case presents the not uncommon situation where the ALJ was confronted with conflicting evidence. In resolving that conflict, the ALJ did exactly what the regulations require, including explaining how he considered the persuasiveness of the conflicting medical opinions. Parent's argument is simply a disagreement with the ALJ's view of the evidence, and under the deferential standard of review, that disagreement is not enough to warrant remand. As counsel acknowledges, the ALJ did recognize that Mr. Parent's impairments were severe, but he could nevertheless do a limited range of simple, unskilled work with other limitations, including not having concentrated exposure to respiratory irritants. That RFC finding was supported by substantial evidence, including the medical assessments of the two state agency doctors, Drs. Hennessey and Marks, as well as the ALJ's extensive discussion of the Ms. Canale. The ALJ fully addressed that opinion and reasonably concluded that it was not supported by her treatment notes. As the court recognizes throughout her treatment, she characterized parents' mental impairments as mild, or excuse me, moderate in the beginning of the treatment, and later on as relatively mild. The mental status findings were generally unremarkable other than some findings of mood and affect, and indeed she said he had a partial response to treatment. From the time he started treatment in March 2019 to 14 months later in May 2020, her notes consistently show his behavior was generally stable, medication compliance was good, no side effects were observed or reported. Parent himself generally denied psychiatric complaints at these visits, and he acknowledged that his symptoms were improving on medication. While there were two visits during this time where a parent reported some increased symptoms of anger or anxiety, on those occasions Ms. Canale adjusted his medications, and the subsequent visit shows that he was again doing well. And I just want to point out one thing that was mentioned earlier. During these treatment notes, Ms. Canale never in the contemporaneous treatment notes characterized his impairments as extreme. It was moderate at the beginning, later on mild. While he did return to treatment three months later after this May 2020 visit, at that time he said he had stopped taking olanzapine, which was a medication that he'd been on for many years predating treatment with Ms. But the finding of increased symptoms during this period when he stopped taking his medication doesn't undercut the AEDV's conclusion that he had a positive response to treatment, that he had improved during treatment. His symptoms got a bit worse when he stopped taking his meds, but that doesn't undercut the finding that when he was compliant with his treatment, he was seeing a benefit. And even during this period, this two-month period in August and the mental status examinations by Ms. Canale were still generally unremarkable other than some findings of things like affect and mood. She did not characterize his impairments as extreme at this time. That didn't happen until she submitted her opinion in support of a disability application. That was the first time that she said that he had extreme limitations, not just in one, but in all four of these relevant areas of function under the Part B criteria. So it was certainly reasonable for the AOJ to note the discrepancy between what Ms. Canale was saying in her contemporaneous treatment notes and what she was saying in her opinion, and it was entirely reasonable in light of the conflicting evidence for the AOJ to have given this opinion, found this opinion less persuasive. And just to go back to one point earlier, the district court did say that the AOJ did not conduct, address the supportability of Ms. Canale's opinion, but in fact the AOJ did. He said her opinion was inconsistent with the longitudinal treatment notes, and the vast majority of these notes were from Ms. Canale herself. The supportability factor goes to the support, including the supporting objective findings that the source itself provides. So by referencing Ms. Canale's treatment notes, although he didn't use the word supportability, what the AOJ was in fact doing was talking about the supportability. The treatment record, including her own treatment notes, do not support the findings that she made. Similarly, with respect to Dr. Hartman, the consultative examiner, the AOJ reasonably determined that his applied limitations were not consistent with his examination findings. As noted, based on his examination findings, including the serial sevens tests, which involved counting backwards by sevens from 100, the AOJ, excuse me, Dr. Hartman said this showed only mildly impaired attention and concentration. Yet when he provided his opinion, the consultative examiner, without explanation, said he actually had marked limitations in concentration. And to address parents' point about recontacting Dr. Hartman, this court has said most recently, I believe, with Shillow, which is a case I can provide a cite for, I don't believe it's in my brief, that the AOJ is not required to recontact a source before finding their opinion unpersuasive. That error in a doctor's opinion or inconsistency is not the same as a gap in the treatment record, which would require further development of the record. And as long as the record is otherwise complete, there's no need to recontact simply because the AOJ found that a source made inconsistent statements. And I would also emphasize that with respect to Dr. Hartman's opinion, it wasn't just the AOJ that found it inconsistent. Dr. Hartman's opinion was also reviewed by Dr. Marks and Dr. Hennessy, the two state agency doctors. Both of those Dr. Hartman's opined marked limitations were not supported by his examination findings, and both of these doctors made specific findings to that effect. So I don't think you can say that the AOJ's conclusion that Dr. Hartman's opinion was inconsistent with his examination findings was completely irrational, when in fact, the two doctors who looked at it reached exactly the same conclusion that the AOJ did. It was reasonable for the AOJ to say these two things don't line up, therefore, particularly in light of the conflicting evidence, I'm going to give this opinion, find this opinion less persuasive than these other opinions. The AOJ was entitled to do that. Finally, with respect to the limitations on concentrated exposure to respiratory irritants, as this court recognized, it was reasonable for the AOJ to conclude that Parent could have some exposure to respiratory irritants, particularly because he was a smoker. And even if this was unreasonable, the precise extent of Parent's ability to tolerate exposure to respiratory irritants is academic, because the jobs identified at Step 5 didn't involve exposure to pulmonary irritants. And in fact, that comes from the Dictionary of Occupational Titles. That is the standard reference that is relied on in these cases. So even though there was no V.E. testimony about what these jobs would require, we can look at the Dictionary of Occupational Titles, which is an authoritative resource for these jobs. If the court has any questions, I'd be happy to answer them. Otherwise, I'll rest on my brief. Okay. Thank you, Mr. Hurd. Mr. Schneider, you have three minutes for rebuttal. Thank you. I think it's important for you to review the summary of the medical opinions and the findings of Nurse Practitioner Cannelli. On May 13, 2019, she noted his mood was better. Then in July 2019, he's not doing good. I'm starting to get angry and turning physical. His anger is worse. It interferes with his social functioning. His ADD continues. Attention is poor, disorganized, forgetful. During the exam, he was depressed and showed signs of anxiety. August 20, 2019, she noted a partial treatment response. He thought the medication was working. She said he has difficulty following our conversation today. Perhaps it's a concentration issue, perhaps cognitive ability, signs of anxiety and depression. Feelings of anxiety predominate. I'm not going to read this all to you because you can read it yourself. October 1st, he shows partial response, anxiety present, anxiety attacks a few times a week. And then she wrote on December 4th, how symptoms have increased in frequency or intensity, anxiety attacks occurring a few times a week. January 28, 2020, partial response. I tried Chantix for tobacco. It gave me mood swings. Then he was improved and doing well in April. In May 2020, feeling good. In August, when he stopped taking Olanzapine, he felt worse. Medication side effects are fatigue and hypersomnambulance, anxiety present. So it really is up and down, and there is no clear period when he's better. We're confusing, though, impairments and limitations. You can have a moderate impairment that has marked limitations. For somebody in the psychiatric field, a severe impairment might put you in the hospital, but it doesn't mean you could work and concentrate and get along with people. So please reread the section on the facts. And I don't think any reasonable person looking at all the facts could conclude that Wayne Parent had the functional residual capacity to work. And, you know, it's so rare that the commissioners examining consultant and the treating source agree, essentially, and then to be overruled by the non-examining consultants. I think that is not substantial evidence. Thank you. All right. Thank you, Mr. Schneider. Mr. Hurd, we will reserve decision.